# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GEORGE CREWS and KIMBERLY CREWS,**

      **Plaintiffs,**

**v.**                                                                    **Case No:   6:15-cv-866-Orl-31DCI**

**FEDERAL INSURANCE COMPANY,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 26) filed by the Defendant, Federal Insurance Company ("FIC"), and the response in opposition (Doc. 31) filed by Plaintiff George Crews ("Crews"),[1] as well as FIC's reply (Doc. 34), and the sur-reply (Doc. 38) filed by Crews.

### I.   Background

Crews owns a house in Seminole County, Florida, which he bought in 2005.   The house's exterior walls are covered by a specialized system (henceforth, the "EIFS") of insulated foam and synthetic stucco.   FIC issued a homeowners policy (henceforth, the "2013 Policy") on the house that provided coverage from September 30, 2013 to September 30, 2014.

---

[1] Plaintiff Kimberly Crews – the spouse of George Crews – was made a party to this case after George Crews responded to the motion for summary judgment.   (Doc. 32).   She has not filed any responses to the instant motion and has instead adopted those filed by her husband. (Doc. 41 at 1-2).   Because Kimberly Crews did not participate in regard to the instant motion and responses, and for the sake of simplicity, "Crews" will be utilized in the remainder of this order to refer only to George Crews.

In 2007, Crews had a new roof installed on the house.  In July 2014, while the house was being painted, Crews discovered water damage to numerous parts of the house, apparently resulting from the roof having been defectively installed seven years earlier.  In its motion, FIC contends that exclusions in the 2013 Policy preclude coverage for the defective roof and all of the damage resulting from it.  Crews agrees that much of the damage is not covered but contends that he is entitled to coverage for (a) damage to the EIFS and (b) mold caused by the defective roof.

**B.     Legal Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.  Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.*  The party opposing a motion for summary

judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### C. Analysis

The 2013 Policy contains two exclusions that are relevant to the instant motion. The first – henceforth, the "Construction Defect Exclusion" – excludes coverage for

> any loss caused by the faulty acts, errors, or omissions of you or any other person in planning, construction or maintenance. . . . But we do insure ensuing covered loss unless another exclusion applies.

(Doc. 26-2 at 61). The second relevant exclusion – henceforth, the "Rot Exclusion" – excludes from coverage any

> wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

(Doc. 26-2 at 59).

At least for purposes of this motion, the parties appear to agree that the roof was defectively installed in 2007, causing water to be drawn back to the house. Over the years, this water caused damage to, among other things, interior finishes, soffits, structural members and plywood sheathing. The parties agree that the Construction Defect Exclusion bars coverage for

- 3 -

the defective roof itself.  (Doc. 31 at 2).  Although Crews does not say so explicitly, he appears to concede that coverage for the damage to the finishes, fascia, soffits, structural members, and plywood sheathing is barred by the Rot Exclusion.  However, he contends that the faulty roof also caused (a) damage to the EIFS and (b) mold, both of which should be covered by the 2013 Policy.

### A.     The EIFS

According to the testimony of one of Plaintiff's experts, Roger Repstien, the EIFS is composed of five layers, attached to the exterior sheathing of the house:  insulating foam, a synthetic glue that bonds the foam to the sheathing, a fiberglass mesh, a synthetic coat, and then an exterior finish coat.  (Doc. 31 at 3).  Repstien, an engineer, architect, and general contractor, testified that water entering the EIFS due to the faulty roof would be trapped, with no way to escape other than becoming a vapor and being drawn through the wall into the home's interior.  (Doc. 31 at 3-4).  The EIFS does not rot or deteriorate, Repstien testified, but so long as it contains water, its R-value is reduced.[2]  (Doc. 31 at 4).  According to Repstien, if the EIFS were to dry out, its insulating efficiency would be restored, but Repstien was not sure whether vaporization alone would be enough to completely dry it out.  (Doc. 31 at 4).

FIC argues that the EIFS was not damaged as a result of the defective roof and, in addition, that the EIFS was defective and that coverage of it is therefore barred by the same provision that bars coverage of the defective roof – the Construction Defect Exclusion.  (Doc. 34 at 5-8).  In regard to the damage alleged by the Plaintiff – the R-value reduction caused by retention of water in the EIFS – FIC argues that the reduction is only temporary and will disappear as the water migrates out as vapor.  (Doc. 34 at 4).  In addition, FIC points to testimony from Repstien that

---

[2] An R-value is a measure of the resistance of an insulating or building material to heat flow.  The higher the R-value, the greater the insulating effectiveness.  ("R-value." Dictionary.com. http://www.dictionary.com/brwose/r-value (last visited November 16, 2016)).

the R-value of an EIFS fluctuates with relative humidity, measuring a lower value when it is raining than when it is sunny and hot.  (Doc. 34 at 5).  Because the R-value of the EIFS normally fluctuates, FIC argues, the temporary fluctuation caused by the water retention does not constitute damage.  However, FIC offers no evidence as to how long it will take for the EIFS to dry out after the defective roof is repaired, or even if it will ever completely dry out.  The fact that the R-value of the EIFS fluctuates over time does not establish that a permanent (or effectively permanent) reduction in the R-value caused by water retention is not damage.  FIC has not shown that it is entitled to summary judgment on this point.

Turning to its second argument, FIC notes that the EIFS was installed without any means for trapped water to drain, but that according to Repstien, EIFS manufacturers today install a drainage system in the bottom of the EIFS.  (Doc. 34 at 6).  In addition, one of FIC's experts, Daniel Neeb, testified that the systems are now installed with a moisture barrier between the EIFS and the exterior sheathing of the house, which was not the case in the late 1980s, when the EIFS was installed on the Crews house.  (Doc. 34 at 6-7).  Because the EIFS on the Crews house was not installed with a drainage system or a moisture barrier, FIC argues that it was defective, and therefore any damage to it is not covered under the 2013 Policy.  However, the fact that improvements have been made to a product is not enough, standing alone, for the Court to conclude that the original, unimproved product was defective.

### B.     Mold damage

The report of Kathleen Norflus, another of Plaintiff's experts, includes an estimate of approximately $9,000 for mold remediation in six areas of the Crews home.  (Doc. 34 at 8).  FIC complains that Norflus' report does not contain any evidence that mold was found in the house or that remediation is required.  (Doc. 34 at 9).  However, Norflus did mention the presence of mold

- 5 -

at the Crews home during her deposition testimony.  (Doc. 26-8 at 86).  At best, FIC's argument on this point goes to the weight of the evidence supporting this finding, and is not a basis for summary judgment in its favor.

FIC also argues that any mold would have been caused by the combination of the defective roof and the defective EIFS, and therefore would not be covered.  (Doc. 34 at 9).  As noted above, FIC has not established that the EIFS was defective, and therefore it is not entitled to summary judgment on this point.

### IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 26) filed by the Defendant is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 18, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party